**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Ra O. Amen (*Pro Hac Vice* application pending)
ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

**NELSON & FRAENKEL LLP**
Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
601 So. Figueroa Street, Suite 2050
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

**STEWART, MITTLEMAN & O'ROURKE, L.L.C.**
Mark D. Mittleman (*Pro Hac Vice* application pending)
mdm63105@aol.com
222 South Central Avenue, Suite 202
Saint Louis, Missouri 63105
Telephone: (314) 863-8484
Facsimile: (314) 863-5312

*Counsel for Plaintiffs and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

| | |
|---|---|
| MARK ANGELES, JEFFREY ANGELES, LINDA KELLY, TREVOR KELLY, ELIZABETH MONTGOMERY, AND RICHARD HENLEY MONTGOMERY as individuals and on behalf of all other similarly situated individuals and entities,<br><br>Plaintiffs,<br><br>v.<br><br>OMEGA FAMILY SERVICES LLC d/b/a PRIME INSURANCE SOLUTIONS,<br><br>Defendant. | Case No.: **'21CV1753 W    BGS**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

[Case No.]

# CLASS ACTION COMPLAINT

Plaintiffs, Mark Angeles, Jeffrey Angeles, Linda Kelly, Trevor Kelly, Elizabeth Montgomery, and Richard Henley Montgomery bring this Class Action Complaint individually and on behalf of all other similarly situated individuals and entities against Omega Family Services, LLC d/b/a Prime Insurance Solutions ("Omega Family Services") and hereby state as follows:

## NATURE OF ACTION

1. Plaintiffs assert this class action individually and on behalf of all other similarly situated individuals and entities against Defendant for its involvement in a scheme where Plaintiffs and class members were sold counterfeited and nonexistent "PregnancyCare" insurance policies, which purported to provide surrogacy insurance to Plaintiffs and class members (which primarily include hopeful parents) and their surrogate mothers for gestational surrogacy costs.

2. This class action seeks damages under various state and common law claims.

3. Defendant Omega Family Services is currently in bankruptcy proceedings before the United States Bankruptcy Court Southern District of California.

4. Accordingly, Plaintiffs filed a motion for relief from the automatic stay, which was subsequently granted. *See* United States Bankruptcy Court Southern District of California's Order, *In Re Omega Family Services, LLC*, Case No. 20-06121-LA7, DE 34, entered on September 12, 2021 ("Order Granting Relief From Automatic Stay") (attached as Ex. A).

5. Pursuant to the Order Granting Relief From Automatic Stay, Plaintiffs individually and on behalf of all other similarly situated individuals and entities seek in damages only the proceeds of Defendant's Errors and Omissions insurance policy, issued by National Casualty Company, Policy Number FNO0001738-VA-03-05.

## JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class

members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

7. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendant conducts its affairs in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

8. This Court has personal jurisdiction over Defendant as it is a California corporation, has purposefully availed itself of the forum, has transacted business regularly in the forum, and because the exercise of jurisdiction in this forum over Defendant would not offend traditional notions of fair play and substantial justice.

## PARTIES

9. Plaintiff Mark Angeles, an individual, is a California resident.

10. Plaintiff Jeffrey Angeles, an individual, is a California resident.

11. Plaintiff Linda Kelly, an individual, is a California resident.

12. Plaintiff Trevor Kelly, an individual, is a California resident.

13. Plaintiff Elizabeth Montgomery, an individual, is a Missouri resident.

14. Plaintiff Richard Henley Montgomery, an individual, is a Missouri resident.

15. Defendant Omega Family Services is a California limited liability company with a principal place of business at 110 West A Street, Suite 1100, San Diego, CA 92101.

## BACKGROUND FACTS

**The Scheme to Defraud Plaintiffs and Class Members**

16. Defendant is part of a nationwide scheme that resulted in the misappropriation and/or theft of premium dollars from hopeful parents throughout the United States by selling counterfeited and nonexistent "PregnancyCare insurance policies" (the "Counterfeited Policies"), which purport to provide coverage for medical complications and delivery costs for pregnant gestational surrogates (the "Scheme"). The "Counterfeited Policies" include all counterfeited and nonexistent "insurance policies" sold to Plaintiffs and class members.

17. The Scheme involved supposed PregnancyCare insurance policies that purport to insure over 700 hopeful parents, surrogate mothers, and gestational surrogacy service providers throughout the United States.

**Plaintiffs and Class Members**

18. Plaintiffs Mark and Jeffrey Angeles are a married couple.

19. Plaintiffs Linda and Trevor Kelly are a married couple.

20. Plaintiffs Elizabeth Montgomery and Richard Henley Montgomery are a married couple.

21. Plaintiffs Mark and Jeffrey Angeles learned of PregnancyCare through their surrogacy agency, Same Love Surrogacy LLC.

22. Plaintiffs Linda and Trevor Kelly learned of PregnancyCare through their surrogacy agency, Surrogate Parenting Services.

23. Plaintiffs Elizabeth Montgomery and Richard Henley Montgomery learned of PregnancyCare through their surrogacy agency, Pathways to Parenthood LLC.

24. "The Surrogacy Agencies" shall mean Same Love Surrogacy LLC, Surrogate Parenting Services, and Pathways to Parenthood LLC.

25. Plaintiffs Mark and Jeffrey Angeles purchased a PregnancyCare insurance policy in or about October of 2019 from Defendant.

26. Plaintiffs Linda and Trevor Kelly purchased a PregnancyCare insurance policy in or about September of 2019 from Defendant.

27. Plaintiffs Elizabeth and Richard Henley Montgomery purchased a PregnancyCare insurance policy in or about December 2019.

28. Upon information and belief, class members have paid considerable premiums for the Counterfeited Policies.

29. Plaintiffs Mark and Jeffrey Angeles approximate that they paid more than $14,850 in premiums over the course of 11 months for non-existent and forged PregnancyCare "insurance coverage." Plaintiffs Mark and Jeffrey Angeles most recent premium payment was approximately $1,350.

30. Plaintiffs Linda and Trevor Kelly approximate that they paid $16,600 in premiums and a deposit over the course of 14 months for non-existent and forged PregnancyCare "insurance coverage." Plaintiff's most recent premium payment was approximately $1,150.

31. Plaintiffs Elizabeth and Richard Henley Montgomery approximate that they paid approximately $15,000 in premiums for non-existent and forged PregnancyCare "insurance coverage".

32. Plaintiffs Mark and Jeffrey Angeles' surrogate (whom the Counterfeited Policy supposedly insured) gave birth to Plaintiffs Mark and Jeffrey Angeles' daughter in August of 2020.

33. Plaintiffs Linda and Trevor Kelly's surrogate (whom the Counterfeited Policy supposedly insured) gave birth to Plaintiffs Linda and Trevor Kelly's daughter on August 16, 2020.

34. Plaintiffs Elizabeth and Richard Henley Montgomery's surrogate (whom the Counterfeited Policy supposedly insured) gave birth to Plaintiffs Elizabeth and Richard Henley Montgomery's son in September of 2020.

35. Upon information and belief, Plaintiffs and class members did not discover that they were defrauded until after substantial premium payments had been made and substantial medical costs incurred.

36. Plaintiffs Mark Angeles, Jeffrey Angeles, Linda Kelly, Trevor Kelly, Elizabeth Montgomery, and Richard Henley Montgomery did not discover that they were defrauded until after the birth of their respective children.

37. As a result of the Scheme, Plaintiffs Mark and Jeffrey Angeles have incurred approximately $60,000 in unpaid medical bills (including for their daughter's delivery) that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

38. As a result of the Scheme, Plaintiffs Mark and Jeffrey Angeles have paid approximately $25,000 for medical bills that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

39. As a result of the Scheme, Plaintiffs Linda and Trevor Kelly have incurred approximately $17,000 in unpaid medical bills (including for their daughter's delivery) that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

40. As a result of the Scheme, Plaintiffs Linda and Trevor Kelly have paid approximately $10,000 for medical bills that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

41. As a result of the Scheme, Plaintiffs Elizabeth and Richard Henley Montgomery have incurred not less than $17,000 in unpaid medical bills (including for their son's delivery) that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

42. As a result of the Scheme, Plaintiffs Elizabeth and Richard Henley Montgomery have paid approximately $17,000 for medical bills that were supposedly covered under their non-existent and forged PregnancyCare insurance policy.

**Defendant & the Captive Reinsurance Relationship**

43. The fraud alleged in this Complaint relates to an area of insurance known as "captive reinsurance." Captive reinsurance programs are complex multi-party arrangements that require specialized expertise and significant underwriting capacity.

44. In short, in a captive reinsurance relationship, a broker (who is not licensed to issue insurance policies) uses several intermediaries to form an indirect relationship with an insurance company (an "Issuing Carrier"). This relationship allows the broker to indirectly issue policies to its customers, act as its own "insurance company," assume part of the risks, and retain additional profits.

45. In the type of captive reinsurance program at issue here, an insurance broker or other company (the "Broker/Owner") forms and owns a captive reinsurance company (the "Captive"). The Captive is ultimately responsible for paying some or all the losses on policies sold by the Broker/Owner.

46. A Captive can also be referred to as a reinsurer.[1]

47. Because Captives are not licensed direct insurers, the Broker/Owner seeks to engage an Issuing Carrier to issue the insurance policies to be resold by the Captive. The apportionment of risk between the Issuing Carrier and the Captive is typically documented in a reinsurance agreement through which the Captive (as the reinsurer) agrees to reimburse the Issuing Carrier for some or all of the losses incurred under the policies.

---

[1] https://www.captive.com/articles/how-do-captive-insurers-use-reinsurance.

48. Typically, the Captive pays the Issuing Carrier a fee or commission payment for acting as the Issuing Carrier. In addition, the Captive provides collateral to the Issuing Carrier to secure, among other things, the Captive's obligation to reimburse the Issuing Carrier for any reinsured losses that the Issuing Carrier incurs.

49. Typically, the Captive issues or is responsible for issuing the individual insurance policies to its customers.

50. Typically, the Captive processes or is responsible for processing the individual insurance claims of its customers.

51. These complex transactions are often facilitated by a "captive intermediary," an entity that assists a Broker/Owner in (1) developing an actuarial model and business plan, (2) forming the Captive, and—most importantly—(3) identifying an Issuing Carrier to issue the policies to be sold by the Broker/Owner and reinsured by the Captive. Ambassador Group LLC d/b/a Ambassador Captive Solutions ("Ambassador") is such a captive intermediary, founded by Brandon White ("White") in 2011 in Louisville, Kentucky.

52. Upon information and belief, Ambassador and/or White created Omega Insurance Company SP, a cell of Performance Insurance Company SPC, which serves as the Captive for the Scheme.

53. Upon information and belief, White directly or indirectly owns at least part of Ambassador.

54. Upon information and belief, Defendant Omega Family Services was created for the sole purpose of marketing the Counterfeited Policies.

55. Omega Family Services marketed the Counterfeited Policies to Plaintiffs, class members, and surrogacy agencies engaged by Plaintiffs and class members.

56. Upon information and belief, Omega Family Services received a portion of all premium payments made for the Counterfeited Policies by Plaintiffs and the Class.

57. Defendant marketed insurance policies under supposed captive reinsurance programs to Plaintiffs, class members, and surrogacy agencies engaged by Plaintiffs and class members. However, no Issuing Carrier was engaged with respect to the Counterfeited Policies sold to Plaintiffs and class

members and no actual insurance policies were issued by any Issuing Carrier for the Counterfeited Policies sold to Plaintiffs and class members. Instead, Ambassador and White forged documents that misled Plaintiffs and class members into believing that Issuing Carriers had issued actual policies in connection with the Counterfeited Policies sold to Plaintiffs and class members.

58.     Upon information and belief, Ambassador and White forged or caused the forgery of the Counterfeited Policies, which led Plaintiffs, class members, and surrogacy agencies engaged by Plaintiffs and class members into believing that Issuing Carriers had issued policies in connection with the Counterfeited Policies sold to Plaintiffs and class members.

59.     Upon information and belief, Ambassador and White forged and used a "Quota Share Reinsurance Agreement" that purports to be entered into among an Issuing Carrier and Defendant Performance Insurance Company SPC for the Scheme.

60.     Upon information and belief, at no time has an Issuing Carrier (1) been engaged to issue insurance policies with respect to the Counterfeited Policies, (2) received premiums, fees, or other compensation in connection with the Scheme, (3) signed any agreements in connection with the Scheme, or (4) provided Ambassador with a quote for this or any other captive program.

61.     Plaintiffs and class members made premium payments on the Counterfeited Policies believing that such monies (or a portion thereof) were remitted to the supposed Issuing Carrier. However, monies from such premium payments were never remitted to any Issuing Carrier. Instead, the participants of the Scheme retained all such premium payments from Plaintiffs and class members.

62.     Upon information and belief, Defendant negligently failed to recognize the forged "Quota Share Reinsurance Agreement". Upon information and belief, Defendant failed to investigate or ask for additional documentation showing that an Issuing Carrier, acting as a licensing front, was backing the PregnancyCare plans.

63.     Upon information and belief, Defendant's actions (or lack thereof) in the Scheme caused excessive damages for Plaintiffs and Class members by preventing them from obtaining alternative insurance or even negotiating a "self-pay rate" with the medical providers while also leaving Plaintiffs and Class members responsible for enormous medical bills.

**The Misrepresentations**

64. Omega Family Services negligently made several misrepresentations to Plaintiffs, class members, and surrogacy agencies engaged by Plaintiffs and class members about the Counterfeited Policies, which Omega Family Services asserted provided surrogacy insurance to Plaintiffs (the "Misrepresentations").

65. Upon information and belief, several of the Misrepresentations came in late 2018 in the form of numerous documents that Omega Family Services sent to the Surrogacy Agencies engaged by Plaintiffs, and which information was then passed on to Plaintiffs prior to their purchase of PregnancyCare policies:

  a) Omega Family Services distributed to the Surrogacy Agencies its PregnancyCare FAQ Flyer which stated that "PregnancyCare is licensed and insured by AXA [an Issuing Carrier] in all 50 states and issued by Omega Insurance Company…. The plan will take care of all appropriate claims processing and payments. When using a Non-Participating Provider, maternity services are still covered 100%, but the GC may need to submit a claim form…. When the GC is using a Participating Provider for maternity services, there are no out-of-pocket expenses. When she uses a Non-Participating Provider, there are two possible scenarios: (1) the provider asks her to pay for the services, and then she submits a claim form to the insurance company for reimbursement; or (2) the provider bills her, and she submits a claim form to the insurance company with the bill so the insurance company will pay the provider directly." (*See* Ex. B.) The Surrogacy Agencies then passed this information on to their respective client/Plaintiff.

  b) Omega Family Services distributed to the Surrogacy Agencies its PregnancyCare brochure which stated "The monthly premium covers 100% of maternity services: prenatal, delivery and postpartum services with Participating Providers. PregnancyCare offers an extensive nationwide network with over 700,000 providers in all 50 states" and displayed the mark of Issuing Carrier AXA. (*See* Ex. C.) The Surrogacy Agencies then passed this information on to their respective client/Plaintiff.

  c) Omega Family Services distributed to the Surrogacy Agencies the PregnancyCare Plan Document and Summary Plan Description (Effective: November 01, 2018) bearing the AXA mark and stating that "THIS PLAN DOCUMENT AND SUMMARY PLAN

DESCRIPTION ('Plan Document'), made by AXA (the 'Company') as of November 01, 2018, hereby sets forth the provisions of 'Pregnancy Care' (the 'Plan')." (*See* Ex. D, at 1-3.) The Surrogacy Agencies then passed this information on to their respective clients/Plaintiffs.

66. Several of the Misrepresentations came in the form of communications directly from Omega Family Services to Plaintiffs in 2019.

67. In multiple emails to Plaintiff Linda Kelly in June and July of 2019, Defendant stated that "The plan covers 100% of all pregnancy related medical services in or out of the network" and that all claims "are covered at 100% when used for maternity. The only thing the member will have to do is to request the OB/GYN to submit a prior authorization to member services." (*See* Exs. E, F.)

68. Upon information and belief, Omega Family Services made misrepresentations to all class members and class members' surrogacy agencies (the "Class Misrepresentations") that were materially similar to the Misrepresentations. Upon information and belief, the Class Misrepresentations were passed from class members' surrogacy agencies to class members.

69. Defendant is a marketing company and a professional supplier of information.

70. Defendant understood, intended, and expected that the Misrepresentations and Class Misrepresentations that it made about PregancyCare to Plaintiffs' and Class Members' surrogacy agencies would be communicated by said surrogacy agencies to Plaintiffs and Class Members.

71. The Misrepresentations that Defendant made about the Counterfeited Policies to Plaintiffs' surrogacy agencies were communicated by said surrogacy agencies to Plaintiffs.

72. Upon information and belief, the Class Misrepresentations that Defendant made about PregancyCare to Class Members' surrogacy agencies were communicated by said surrogacy agencies to all Class Members.

73. Defendant understood, intended, and expected that Plaintiffs and Class Members would reasonably rely on the Misrepresentations and Class Misrepresentations that Defendant made to their surrogacy agencies about the Counterfeited Policies.

74. Plaintiffs and Class Members reasonably relied on the Misrepresentations and Class Misrepresentations that Defendant made to their surrogacy agencies about the Counterfeited Policies in deciding to purchase the Counterfeited Policies.

**Discovery of the Scheme**

75. Upon information and belief, on October 9, 2020, Defendant canceled all PregnancyCare policies as of October 31, 2020.

76. On or about December 18, 2020, Defendant informed Plaintiffs and class members that the PregnancyCare policies were the subject of a federal lawsuit by several Issuing Carriers for the unauthorized use of the Issuing Carriers' mark in the enacting the Scheme (the "Issuing Carrier Suit").

77. Defendant has failed to make any effort of offer restitution to Plaintiffs or class members with regards to the Scheme.

## CLASS ACTION ALLEGATIONS

78. Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

> **All purchasers of a PregnancyCare insurance policy that made such purchase in the United States on or after January 1, 2011 (the "Class Period").**

79. Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of state claims in the alternative to the nationwide claims on behalf of a subclass for the State of California (the "California Class"), defined as follows:

> **All purchasers of a PregnancyCare insurance policy that made such purchase in the State of California on or after January 1, 2011.**

80. Excluded from the Classes is Defendant; any parent, affiliate, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; Defendant's officers or directors; or any successor or assign of Defendant. Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

81. Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

82. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the Class is so numerous that joinder of all members is impracticable. While Plaintiffs do not know the exact number of

the members of the Class, Plaintiffs believe the Class contains over 700 members, and the California Class contains over 500 members. Class members may be identified through objective means, including through Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

83.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirements, this action involves common questions of law and fact as to all members of the Class, which predominate over any questions affecting individual members of the Class. Such questions of law and fact common to the Class include, but are not limited to:

   a. Whether Defendant had a legal duty to ensure that the information that Defendant disseminated to Class members was not materially inaccurate or misleading;

   b. Whether documents and statements publicly disseminated by Defendant relating to their fraudulent "insurance" policies contained materially false and misleading statements and representations;

   c. Whether Defendant acted negligently in disseminating materially false or misleading information in connection with the sale of the fraudulent "insurance policies";

   d. Whether Defendant's conduct, including its failure to act, resulted in or was the cause-in-fact or proximate cause of Plaintiffs' and Class members' damages;

   e. Whether Plaintiffs and Class members have sustained damages by reason of Defendant's misrepresentations and the proper measure of such damages;

   f. Whether Plaintiffs and Class members are entitled to relief, including equitable relief;

   g. Whether the circumstances of the Scheme would make it unjust for Defendant to retain the benefit Plaintiffs and Class members conferred upon Defendant; and

   h. Whether Defendant's Misrepresentations and Class Misrepresentations inflicted substantial injuries upon Plaintiff and Class members that (a) were not outweighed by any countervailing benefits to consumers or competition and (b) could not have been reasonably avoided by Plaintiffs and class members.

84. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs purchased counterfeited and nonexistent "insurance policies" from Defendant. Plaintiffs' damages and injuries are akin to other Class members, and Plaintiffs seek relief consistent with the relief of the Class members.

85. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiffs have no conflicts of interest with Class members. Plaintiffs' Counsel are competent and experienced in litigating consumer class actions, including insurance matters. Plaintiffs intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other Class members.

86. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and individual Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

87. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Classes as a whole, making injunctive and declaratory relief appropriate to the Classes as a whole.

88. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues are set forth in Paragraph 80(a)–(h) above.

89. Finally, all members of the proposed Classes are readily ascertainable. Defendant has access to information regarding the organizations which purchased its Counterfeited Policies. Using this information, Class members can be identified and their contact information ascertained for the purpose of providing notice to the Classes.

**FIRST CLAIM FOR RELIEF**
**Negligent Misrepresentation**
*(On behalf of Plaintiffs and the Class, or Alternatively, on Behalf of Plaintiffs and the California Class)*

90. Plaintiffs and Class members restate and reallege the preceding paragraphs as if fully set forth herein.

91. Defendant is a professional supplier of information.

92. Defendant had a legal duty to make and ensure that accurate representations were made to Plaintiffs and Class Members regarding the Counterfeited Policies sold under the Scheme.

93. Defendant negligently made, allowed, encouraged, or enabled to be made the Misrepresentations to Plaintiffs and Class members.

94. Defendant negligently made, allowed, encouraged, or enabled to be made material misrepresentations to Plaintiffs and Class members regarding the Counterfeited Policies sold under the Scheme.

95. Defendant breached a legal duty in negligently making inaccurate representations to Plaintiffs, Class Members, and surrogacy agencies engaged by Plaintiffs and Class Members regarding the Counterfeited Policies sold under the Scheme.

96. Defendant breached a legal duty in negligently allowing inaccurate representations to be made to Plaintiffs, Class Members, and surrogacy agencies engaged by Plaintiffs and Class Members regarding the Counterfeited Policies sold under the Scheme.

97. Defendant understood, intended, and expected that the misrepresentations that it made about the Counterfeited Policies to Plaintiffs' and Class Members' surrogacy agencies would be communicated by said surrogacy agencies to Plaintiffs and Class Members.

98. Defendant understood, intended, and expected that Plaintiffs and Class Members would reasonably rely on the misrepresentations that Defendant made to their surrogacy agencies about the Counterfeited Policies.

99. Plaintiffs and Class Members reasonably relied on the misrepresentations that Defendant made to their surrogacy agencies about the Counterfeited Policies.

100. Defendant's misrepresentations and actions caused damages to Plaintiffs and Class members.

101. Defendant's actions were the cause-in-fact and proximate cause of Plaintiffs' and Class Member's damages.

**SECOND CLAIM FOR RELIEF**
**Unjust Enrichment**
*(On behalf of Plaintiffs and the Class, or Alternatively, on Behalf of Plaintiffs and the California Class)*

102. Plaintiffs and Class members restate and reallege the preceding paragraphs as if fully set forth herein.

103. Upon information and belief, Defendant received a portion of all premium payments made by Plaintiffs and Class members for the Counterfeited Policies.

104. In paying insurance premiums for the Counterfeited Policies, Plaintiffs and Class members conferred a benefit (the "Benefit") upon Defendant.

105. Defendant accepted, retained, and appreciated the value of the Benefit.

106. The retention of the Benefit by Defendant would be at the expense of Plaintiffs and Class Members.

107. The circumstances of the Scheme would make it unjust for Defendant to retain the Benefit Plaintiffs and Class members conferred upon Defendant.

**THIRD CLAIM FOR RELIEF**
**Violation of California Unfair Competition Law-Unfair Business Practice**
**Cal. Bus. & Prof. Code § 17200** *et seq.*
*(On behalf of Plaintiffs and the California Class)*

108. Plaintiffs and Class members restate and reallege the preceding paragraphs as if fully set forth herein.

109. Defendant is a "business" as defined by § 17200.

110. California Business and Professions Code section 17200 et seq. prohibits acts of unfair competition, which includes unfair business practices. The unfair conduct detailed herein was directed at California consumers, residents, and citizens.

111. Courts have developed three separate tests to determine whether conduct qualifies as "unfair" for the purposes of the UCL. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014). One definition is a practice that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). A business practice may also be unfair if "(1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Id*. at 1255. In a third approach, "California courts balance the 'impact on [] its alleged victim' against 'the reasons, justifications, and motives of the alleged wrongdoer.'" *Ehret*, 68 F. Supp. 3d at 1137 (quoting *Plumlee v. Pfizer, Inc*., 2014 WL 4275519, at *5 (N.D. Cal. Aug. 29, 2014)).

112. Defendant, by making the Misrepresentations and Class Misrepresentations, engaged in unfair business acts and practices.

113. Defendant's Misrepresentations and Class Misrepresentations "offend[ ] an established public policy" and are "immoral, unethical, oppressive, unscrupulous or substantially injurious to customers." *See Morgan*, 177 Cal. App. 4th at 1254.

114. Defendant's "unfair" practices were designed to induce Plaintiffs and Class Members to purchase and make premium payments for the Counterfeited Policies.

115. As a direct and proximate cause of Defendant's Misrepresentations and Class Misrepresentations, Plaintiffs and Class Members have suffered actual damages.

116. Defendant's Misrepresentations and Class Misrepresentations have inflicted substantial injuries upon Plaintiffs and Class members that (a) were not be outweighed by any countervailing benefits to consumers or competition and (b) could not have been reasonably avoided by Plaintiffs and class members.

117. The "reasons, justifications and motives" of Defendant, for the unfair practices alleged herein, appear only to be financial gain. *See Ehret*, 68 F. Supp. 3d at 1137 (balancing the impact on the alleged victim against "the reasons, justifications, and motives of the alleged wrongdoer" to determine whether a practice is unfair).

118. Defendant's unfair acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the Class, and the California Class respectfully seek from the Court the following relief:

a. Certification of the Classes;

b. Appointment of Plaintiffs as Class representatives and their undersigned counsel as Class counsel;

c. Award Plaintiffs and members of the proposed Classes compensatory and punitive damages from the proceeds of Defendant's Errors and Omissions insurance policy, issued by National Casualty Company, Policy Number FNO0001738-VA-03-05, pursuant to the Order Granting Relief From Automatic Stay;

d. Award Plaintiffs and members of the proposed Classes pre-judgment and post-judgment interest as permitted by law from the proceeds of Defendant's Errors and Omissions insurance policy, issued by National Casualty Company, Policy Number FNO0001738-VA-03-05, pursuant to the Order Granting Relief From Automatic Stay;

e. Award Plaintiffs and members of the proposed Classes reasonable attorney fees and costs of suit, including expert witness fees from the proceeds of Defendant's Errors and Omissions insurance policy, issued by National Casualty Company, Policy Number FNO0001738-VA-03-05, pursuant to the Order Granting Relief From Automatic Stay; and

f. Award Plaintiffs and members of the proposed Classes any further relief the Court deems proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: October 11, 2021              By:      /s/ Michael F. Ram
                                              Michael F. Ram

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Ra O. Amen (*Pro Hac Vice* application pending)
ramen@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

**NELSON & FRAENKEL LLP**
Gretchen M. Nelson (SBN 112566)
gnelson@nflawfirm.com
Gabriel S. Barenfeld (SBN 224146)
gbarenfeld@nflawfirm.com
601 So. Figueroa Street, Suite 2050
Los Angeles, California 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

**STEWART, MITTLEMAN & O'ROURKE, L.L.C.**

Mark D. Mittleman (*Pro Hac Vice* application pending)
mdm63105@aol.com
222 South Central Avenue, Suite 202
Saint Louis, Missouri 63105
Telephone: (314) 863-8484
Facsimile: (314) 863-5312

*Counsel for Plaintiffs
and the Proposed Class*